**Frank VINSON, Plaintiff,**

v.

**Wayne BARKLEY and Ramon Rodriguez, Defendants.**

**No. CIV–85–1451T.**

United States District Court, W.D. New York.

June 30, 1986.

Frank F. Vinson, pro se.

Robert Abrams, Atty. Gen. (Charles D. Steinman, Dept. of Law, Rochester, N.Y., of counsel), for defendants.

## DECISION AND ORDER

TELESCA, District Judge.

In November, 1985, Frank Vinson, then a prisoner at the Groveland Correctional Facility, filed this action under 42 U.S.C. § 1983 against Wayne Barkley, the Superintendent of Groveland, and Ramon Rodriguez, the Chairman of the New York State Board of Parole. Vinson's *pro se* com-

plaint raises two grounds for relief: alleged due process violations resulting from his parole revocation, and the revocation of his outside work clearance pass at Groveland.[1]

■ On January 22, 1986, a document labeled "Rebuttal and Memorandum of Law with a Joinder of Claim" was filed with the Court. In that document, Bruce H. Sillaway moves for permission to join in this action. Mr. Sillaway alleges that he was denied parole at a hearing on January 15, 1986, and claims that his Due Process rights were violated. However, Fed.R. Civ.P. 20(a), governing permissive joinder, states that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." The mere fact that Mr. Sillaway was denied parole at some point in time in a separate proceeding does not pose a question of law or fact common to those presented in Mr. Vinson's action. Accordingly, Mr. Sillaway's request to join Mr. Vinson in this action is denied. Mr. Sillaway may commence separate proceedings if he wishes to pursue his claims.

With respect to Mr. Vinson's complaint, the defendants have moved to dismiss pursuant to Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56. For the reasons set forth below, their request is granted, and Mr. Vinson's complaint is dismissed.

### A. Parole Revocation

■ Mr. Vinson was released on parole from the Albion Correctional Facility on June 1, 1983. His parole was later revoked when he allegedly violated the conditions of his release by failing to report to his Parole Officer and by changing his residence. At his parole revocation hearing in June, 1984, Vinson pled guilty to these charges with an

---

1. Mr. Vinson also filed a habeas corpus petition based on these same claims. *See Vinson v.* *Barkley, et al.,* CIV-85-1316T (decision of June 23, 1986, Telesca, J.).

explanation. On June 29, 1984, the charges were sustained by the parole officials, and Mr. Vinson's parole was revoked.

In January, 1985, Mr. Vinson once again appeared before the Parole Board for consideration of his application for re-release on parole. His application was denied, and he was ordered held in custody for an additional 12 months. Mr. Vinson claims in this action that he was unjustifiably denied parole because he failed to attend meetings of Alcoholics Anonymous. He is requesting monetary damages to compensate him for the time he spent in prison since the Parole Board made its allegedly improper decision.

In his answer and moving papers, defendant Rodriguez raises immunity as a defense because the plaintiff is challenging acts which are part of his official duties as a parole official. This immunity defense is premised on the fact that since parole officials perform functions comparable to those of judges in deciding whether to grant, deny, or revoke parole, *see Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir. 1983), they should be given the same immunity.

The Supreme Court has not yet decided whether state parole officials enjoy absolute immunity as a matter of federal law. *See Cleavinger v. Saxner,* — U.S. —, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). It does not appear that the Second Circuit has definitively answered this question either. *Anderson v. New York State Div. of Parole,* 546 F.Supp. 816, 824 (S.D.N.Y.1982). However, a number of other federal appellate courts have held that state parole officials do have absolute immunity when exercising their official functions.

In *Sellars v. Procunier,* 641 F.2d 1295, 1303, *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981)), after a thorough analysis, the Ninth Circuit determined that parole officials should be entitled to absolute protection from suits for money damages.

We believe that parole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole. The daily task of both judges and parole board officials is the adjudication of specific cases or controversies. Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake. They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions.

Judges enjoy absolute immunity from civil rights suits in order to keep the judicial decision-making process pristine. As noted earlier, we expect and require the judge to be an impartial fact finder. When he or she weighs the merits of a case, we do not want the scales to be tipped by fear of litigation. The adjudicatory process simply could not work if the adjudicator had to anticipate a possible lawsuit from every dissatisfied litigant.

We believe that the same degree of protection must be accorded to the decision-making process of parole board officials. Just as the decision-making process of judges must be kept free from fear, so must that of parole board officials. Without this protection, there is the same danger that the decision-maker might not impartially adjudicate the often difficult cases that come before them. If parole board officials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task of balancing the risk involved in releasing the prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible. Furthermore, time spent in depositions and on the witness stand defending their actions would leave these overburdened public servants with even less time to perform their crucial tasks.

*Id.* at 1303.

The Ninth Circuit recently reaffirmed the *Sellars* decision in *Anderson v. Boyd,* 714

F.2d 906 (1983), holding that parole officials "are entitled to the absolute protection of quasi-judicial immunity" when considering parole applications. *Id.* at 908–909. The same result was reached by the Eighth Circuit, *Evans v. Dillahunty, supra;* the Seventh Circuit, *United States, ex rel. Powell v. Irving,* 684 F.2d 494 (1982); and the Fifth Circuit, *Hilliard v. Board of Pardons and Paroles,* 759 F.2d 1190 (1985).

I find this reasoning compelling, and therefore hold that Mr. Rodriguez is entitled to absolute immunity in his role as Chairman of the New York State Board of Parole from claims for money damages based on actions taken in his official capacity. Accordingly, Mr. Vinson's claim against him is dismissed.

### B. Revocation of Outside Work Clearance

Mr. Vinson's claim against defendant Barkley involves the revocation of his outside work clearance while he was still incarcerated at the Groveland Correctional Facility. According to his complaint, immediately following his revocation hearing, he was given outside clearance to work with a civilian electrician. However, a short while later Vinson was informed by a corrections officer that his outside pass had been revoked. He was given no reason for this revocation, and he claims that he was entitled to a hearing regarding this loss of liberty because of the Due Process Clause of the Fourteenth Amendment.

The Fourteenth Amendment's Due Process Clause applies when action taken by the Government deprived a person of his liberty or property. When there is a claimed denial of due process, courts must initially inquire into the nature of the individual's claimed interest. *Greenholtz v. Inmates of Nebraska Penal & Cor.,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). To have a protectable right,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

This Court has previously established that a prison inmate's expectation of keeping a certain job while in prison does not amount to a property or liberty interest entitled to protection under the Due Process Clause. *Henryhand v. Berberry,* CIV–84–0817T, W.D.N.Y. (decided November 12, 1985, Telesca, J.) [available on Westlaw, DCTU database]; *see also, Gibson v. McEvers,* 631 F.2d 95 (7th Cir.1980); *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.1978); *Bryan v. Werner,* 516 F.2d 233 (3rd Cir. 1975). Without a constitutional or statutory right to his outside work clearance pass, Vinson did not have any right to a hearing prior to the action by prison officials revoking his clearance. Therefore, his claim against Mr. Barkley also must be dismissed.

In light of the above, it is hereby ORDERED that:

a) The Motion of Bruce H. Sillaway to join in this action is DENIED, and

b) The defendants' motion to dismiss this complaint pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED.