Melvin B. LEMLEY

v.

Michael J. BOWERS, et al.

No. 1:92–CV–258–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 16, 1992.

Melvin B. Lemley, pro se.

Daryl Alan Robinson, Melissa Jane Lunsford, Office of State Atty. Gen., Atlanta, GA, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Plaintiff's Motion for Summary Judgment [12], Plaintiff's Motion to Extend Time to File a Pre–Trial Order [15], Plaintiff's Motion for a Refund of his Filing Fee [16], and Defendants' Motion for Summary Judgment [13]. The Court has jurisdiction pursuant to 28 U.S.C. § 1343. The Court DENIES Plaintiff's Motion for Summary Judgment, DENIES Plaintiff's Motion to Extend Time to File a Pre–Trial Order, and GRANTS Plaintiff's Motion for a Refund of his Filing Fee. The Court also GRANTS Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff, Melvin B. Lemley, an inmate at Georgia State Prison in Reidsville, Georgia, brings this suit against Defendants, Michael J. Bowers, Georgia State Attorney General since August 1, 1981; Mamie B. Reese and Mobley Howell, members of the Georgia Board of Pardons and Paroles (the "Board") in 1979 and 1985; Michael H. Wing, a member of the Board in 1985; James T. Morris, Chairman of the Board in 1979; Wayne Snow, Jr., Chairman of the Board in 1985; and other possible John Does and Jane Roes, in their official and individual capacities. Plaintiff alleges that Defendants Reese, Howell, Wing, Morris and Snow deprived him of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and violated his constitutional protection against *ex post facto* laws by denying him parole reconsideration hearings in 1986, 1987, 1988, 1989 and 1990, and by failing to interview him in conjunction with his 1991 parole hearing. Plaintiff also alleges that Defendant Bowers "advised, agreed with and combined together with" the board members "to change the parole rules/guidelines in 1979 and 1985" and to apply the changes to Plaintiff. Plaintiff requests that the Court award him two

million dollars in compensatory damages, two million dollars in punitive damages, and all reasonable attorney's fees. Plaintiff does not seek injunctive relief.

Plaintiff was arrested for a crime that he committed in September, 1978, and was sentenced, in April, 1979, to a term of life in prison. When Plaintiff committed his crime, the Board's rules and regulations (the "Board rules" or "rules") required the Board to consider an inmate serving a life term for parole initially after serving seven years of his life sentence.[1] If the Board denied an inmate parole at this initial hearing, the rules required the Board thereafter to hold an annual hearing to reconsider its parole decision.[2] In December 1979, the Board amended its rules to provide for a reconsideration hearing at least every three years after a denial of parole. In 1985, the Board amended its rules again, this time to provide for a reconsideration hearing at least every eight years. In September 1985, the Board held Plaintiff's initial parole hearing and denied him parole. The Board then notified Plaintiff that it would not reconsider him for parole until September, 1993—eight years later.

In February, 1991, the United States Court of Appeals for the Eleventh Circuit ruled that application of the 1985 amendment to the Board rules (and, by implication, application of the 1979 amendment to the Board rules) to an inmate who committed his crime prior to that date violates the Constitution's *ex post facto* clause. *Akins v. Snow*, 922 F.2d 1558, 1564 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991). Apparently in response to the court's decision in *Akins,* the Board, in November 1991, reconsidered Plaintiff's 1985 parole denial. Plaintiff alleges, however, that the Board reconsidered his denial without interviewing him, and without investigating his "parole plan". Complaint, ¶ 53. Defendants deny Plaintiff's allegation. Answer, ¶ 3.

Plaintiff filed his Complaint on January 8, 1992, and moved for summary judgment on August 28, 1992. Defendants then moved for summary judgment on September 9, 1992. Finally, Plaintiff moved on October 2, 1992 for a refund of his filing fee, and for an extension of time to file his pre-trial order.

## DISCUSSION

I. Plaintiff's and Defendants' Motions for Summary Judgment.

A. Standard of Review for Summary Judgment Motion.

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases where the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In contrast, where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Id.* The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. *Id.* 477 U.S. at 323, 106 S.Ct. at 2552; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)).

---

1. Board rules, ch. 475–3–.06(3) (1972).

2. *Id.,* ch. 475–3–.05(2) (1969).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Clark,* 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir. 1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins,* 833 F.2d at 1528.

## B. Application

### 1. Plaintiff's Claim Against Defendant Bowers.

██ Defendant Bowers contends that he is not liable to Plaintiff for the 1979 change in the Board rules because he was not the Attorney General at that time; the 1985 change because his actions did not deprive Plaintiff of any right; and the application of the changed rules to Plaintiff because he did not participate with the Board in applying the rules to Plaintiff's parole application. Plaintiff has offered no argument or evidence in opposition to any of these contentions.

The Court finds that Defendant Bowers is not liable to Plaintiff for the 1979 changes because he was not the Attorney General at that time. The Court also finds that Bowers is not liable for the 1985 changes because the mere act of advising changes to the Board rules could not deprive Plaintiff of any right. As for Plaintiff's allegation that Bowers "applied" those changes to Plaintiff, Plaintiff has offered no evidence that Bowers participated in the Board's evaluation of his application. Absent such evidence the Court must assume that Bowers did not act beyond the scope of his authority, and, thus, did not involve himself in any aspect of the Board's consideration of Plaintiff's application. The Court, therefore, grants Defendant Bower's Motion for Summary Judgment.

### 2. Plaintiff's Claims Against Defendants in Their Official Capacities.

██ The Eleventh Amendment to the United States Constitution prohibits a plaintiff from suing a state and its agencies in federal court. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Furthermore, "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Id.* at 101, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)) (other citations omitted). *See also, Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."). The Court finds that in this case the state is the real and substantial party in interest. Thus, Plaintiff's monetary claims asserted

against Defendants in their official capacities are barred by the Eleventh Amendment.

3. Plaintiff's Suit Against Defendants in their Personal Capacities.

a. *Absolute Quasi–Judicial Immunity.*

■ Defendants Morris, Reese, Howell, Wing and Snow Jr. claim they are entitled to an absolute quasi-judicial immunity from a suit for damages. In *Cruz v. Skelton,* 502 F.2d 1101 (5th Cir.1974) (*Cruz I*), the former Fifth Circuit held that members of a state's board of pardons and paroles are immune from suits for damages. *Id.* at 1102, *cited with approval by Fuller v. Georgia State Bd. of Pardons and Paroles,* 851 F.2d 1307, 1310 (11th Cir.1988). In *Cruz I* the plaintiff alleged that the defendants violated his rights by refusing to grant him parole. 502 F.2d at 1101. In a subsequent but unrelated case between the same litigants, the former Fifth Circuit described its decision in *Cruz I* as an adoption of a Ninth Circuit decision which held that "members of the parole board, *while employed in the consideration of parole applications,* have quasi-judicial immunity...." *Cruz v. Skelton,* 543 F.2d 86, 87 n. 1 (5th Cir.1976) (*Cruz II*) (emphasis added) (citing *Silver v. Dickson,* 403 F.2d 642, 643 (9th Cir.1968), *cert. denied,* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969)), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977). The court in *Cruz II* apparently interpreted *Cruz I* as finding that parole board members have immunity only when carrying out certain tasks. Thus, there would appear to be some question as to whether board members' absolute immunity covers only actions they take in the course of considering a parole application, or whether it extends to other actions, such as deciding whether even to consider an application.

In *Fuller,* the Eleventh Circuit cited both *Cruz I* and *Cruz II* to support its finding that the defendant board members were immune from a suit in which the plaintiff alleged they denied him parole because of his race. 851 F.2d at 1310. Because *Fuller* involved a denial of parole, both the broader language of *Cruz I* and the narrower language of *Cruz II* support the court's finding. In a more recent case, however, the Eleventh Circuit apparently limited *Fuller*'s potentially broad reach. In *Sultenfuss v. Snow,* 894 F.2d 1277 (11th Cir.1990), the court described *Fuller* as holding that "board members are entitled to quasi-judicial immunity from suits requesting damages *based upon the decision to grant or withhold parole." Id.* at 1278–79 (emphasis added).

Although the United States Supreme Court has yet to decide whether state parole board members enjoy absolute immunity as a matter of federal law, *see Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), courts in other circuits have so held, and have drawn a distinction between board members' actions in granting, denying or revoking parole, and their actions in other spheres. *See, e.g., Russ v. Uppah,* 972 F.2d 300, 303 (10th Cir.1992) (finding that members of the Board of Pardons "have absolute immunity 'from damages liability for actions taken in performance of the [b]oard's official duties *regarding the granting or denying of parole'* ", and recognizing that such actions do not encompass all of the members' duties) (citation omitted) (emphasis added); *Vinson v. Heckmann,* 940 F.2d 114, 116 (5th Cir.1991) (" 'Parole board members are absolutely immune from liability for their conduct in individual parole decisions *when they are exercising their decision making powers.'* [citation omitted].") (emphasis added); *Wilson v. Rackmill,* 878 F.2d 772, 775–76 (3rd Cir.1989) ("[P]robation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties. In their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity."); *Evans v. Dillahunty,* 711 F.2d 828, 830–31 (8th Cir.1983) ("[P]arole officials *in deciding to grant, deny, or revoke parole,* perform functions comparable to those of judges [and are, thus,] entitled to absolute immunity.") (emphasis added); *Sellars v. Procuni-*

*er,* 641 F.2d 1295, 1302 (9th Cir.) ("In our view, parole board officials are entitled to absolute immunity form suits by prisoners *for actions taken when processing parole applications.*") (emphasis added), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981); *Pope v. Chew,* 521 F.2d 400, 405–06 (4th Cir.1975) (same); *Vinson v. Barkley,* 646 F.Supp. 39, 41 (W.D.N.Y. 1986) (noting that the Second Circuit has not definitively addressed this issue, and finding that parole board members are entitled to absolute immunity only when involved in the "decision-making process"). *See also Anderson v. Boyd,* 714 F.2d 906, 910 (9th Cir.1983) ("[Judges] may be accorded one degree of immunity for one type of activity and a different degree for a discrete function.") (citations omitted).

Two circuits, however, have refused to draw a line between parole board members' administrative and adjudicatory duties. *See Johnson v. Rhode Island Parole Bd. Members,* 815 F.2d 5, 7 (1st Cir.1987); *Walker v. Prisoner Review Bd.,* 769 F.2d 396, 398 (7th Cir.1985), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). These courts refused to withhold absolute immunity from members performing administrative acts because of the difficulty and undesirability they saw in differentiating adjudicatory acts from administrative acts. The courts felt that such a distinction "might only be delineated through burdensome litigation which would unduly disrupt the Board's functions." *Walker,* 769 F.2d at 399. Besides, the courts reasoned, "safeguards apart from Section 1983 suits for damages, including review of parole denials through petitions for writ of habeas corpus, 'adequately guard prisoners' parole rights without impairing the performance of Board members.'" *Id.* (citation omitted), *quoted with approval by Johnson,* 815 F.2d at 7.

In determining which actions are entitled to an absolute immunity, the United States Supreme Court instructs that courts should undertake an analysis of the function that a finding of immunity would protect. *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Such an analysis in the instant case produces a dis-

tinction between adjudicatory acts, which are indisputably entitled to absolute immunity, and administrative, legislative, or executive functions. *See Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) (finding the same distinction with respect to judges). Employing such a functional approach, the Supreme Court has found numerous actions taken by judges acting within the scope of their authority not to be cloaked with absolute immunity. *See id.* 484 U.S. at 228, 108 S.Ct. at 545 (finding that a judge does not have absolute immunity from suit for discharging a probation officer for allegedly discriminatory reasons); *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (refusing to extend judicial immunity to judges who promulgated a code of conduct for attorneys); *Ex Parte Virginia,* 100 U.S. (10 Otto) 339, 348, 25 L.Ed. 676 (1880) (declining to extend immunity to a judge charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors).

The Ninth Circuit expressed well the logic behind so limiting the reach of absolute immunity for parole board members. In *Anderson v. Boyd* the court found that parole board members' absolute immunity did not extend to their knowing dissemination of false information regarding a parolee. 714 F.2d at 910. The court, quoting *Sellars,* found that parole board members, like judges, are given absolute immunity when acting as an "impartial fact finder," because when they "weigh[ ] the merits of a case, we do not want the scales to be tipped by fear of litigation." *Id.* at 908. But, this absolute quasi-judicial immunity "extends no further than necessary to accomplish its purpose to insulate parole officials' adjudicatory decisions from potentially distorting influences.... There is no reason to clothe actions taken outside an official's adjudicatory role with the absolute immunity tailored to the demands of that role." *Id.* at 909.

This Court finds that the defendant board members in this case are not entitled

to an absolute quasi-judicial immunity from suit for their decision not to consider Plaintiff for parole. Unlike the facts in *Fuller* and *Cruz I*, Defendants were not considering Plaintiff's parole application in order to render a decision to grant or withhold parole. Nor were Defendants involved in a functional task that required them to act as an impartial fact finder in weighing the merits of Plaintiff's application. Instead, Defendants made a decision, independent of the merits of Plaintiff's application, not even to consider the application. Such a decision is administrative in nature, and not adjudicatory. Therefore, it is entitled, at most, to a qualified good-faith immunity.

### b. *Qualified Immunity.*

Plaintiff cites *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) in support of his contention that he is entitled to receive monetary damages from Defendants. In *Hafer*, the Supreme Court held that state officials may be held personally liable for damages under section 1983 based upon actions taken in their official capacities. *Id.* —— U.S. at ——, 112 S.Ct. at 365.

■ State officials, however, are entitled to a qualified immunity in certain circumstances. The doctrine of qualified immunity insulates government officials from personal liability for money damages for actions taken pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (finding that "government officials [performing discretionary functions] ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.1990). Thus, an official is entitled to the defense of qualified immunity if "a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the

official at the time the conduct occurred." *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir.1990).

■ In evaluating a defense based upon qualified immunity, courts in this circuit follow a two-step analysis. First, "the defendant public official must ... prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). Second, once the defendant makes this preliminary showing, the burden shifts to the plaintiff, who must prove that the official's conduct violated clearly established constitutional law. *Rich*, 841 F.2d at 1564.

■ Plaintiff does not contest that Defendants were acting within the scope of their discretionary authority when they refused to consider his applications. Thus, the burden shifts to Plaintiff to show that Defendant's conduct violated clearly established law. Notwithstanding those cases cited by Plaintiff, the Court finds that prior to the *Akins* decision, it was not clearly established that application of the new Board rules constituted a violation of the *ex post facto* clause, or Plaintiff's due process rights. *See Bowens v. Snow*, No. 91–841, slip op. at 12 (N.D.Ga. Oct. 25, 1991) (Hall, J.), *vacated in part without effect*, slip op. at 5 (April 7, 1992). The Court, therefore, grants Defendants' motion as to Plaintiff's claims concerning their actions prior to the *Akins* decision.

■ Plaintiff also claims that Defendants violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution by failing to interview him in conjunction with his 1991 parole hearing. Complaint, ¶ 53; Plaintiff's Response, ¶ 5 [14–5]. Plaintiff contends that this alleged failure amounted to a denial of a full parole hearing in violation of *Akins* and Board rule 475–3–.11[3].

Defendants respond that the Board repealed Board rule 475–3–.11 effective Sep-

---

3. The text of Board rule 475–3–.11, with emphasis added, is as follows:

    (1) An inmate who is serving a life sentence and is nearing his second or later parole con-

sideration date *is automatically selected for interview by a Board Member* if he meets the criteria stated below:

    (a) has been denied parole previously;

tember 9, 1991, and that Plaintiff's 1991 reconsideration did not begin until the last week of October 1991. Affidavit of Christopher Hamilton, Director of Legal Services for the Board, December 10, 1992, ¶¶ 6, 10 (appended to Defendant's Response to Court Order) [19]. As such, the Board rule was not in effect during Plaintiff's 1991 reconsideration.

Defendants also submitted with their summary judgment motion an earlier affidavit of Mr. Hamilton in which he testified that in evaluating Plaintiff's 1991 application the Board considered: Plaintiff's "Parole Review Summary"; information compiled from an interview with Plaintiff conducted by Plaintiff's institutional case manager; an updated staff analysis of Plaintiff; and any additional information that Plaintiff may have submitted. Hamilton Affidavit, September 4, 1992, ¶ 12. Hamilton testified further that Plaintiff's parole reconsideration in 1991 was "thorough, complete, and fully in accord with Board policy...." Id. at ¶ 12. Defendants' failure to grant Plaintiff a personal interview in conjunction with his 1991 reconsideration was, therefore, fully in accord with the law.

II. Plaintiff's Motion to Extend Time to File Pre-Trial Order.

In light of the Court's decision to grant Defendants' Motion for Summary Judgment, the Court denies Plaintiff's Motion to Extend Time to File a Pre-trial Order as moot.

III. Plaintiff's Motion for a Refund of His Filing Fee.

Plaintiff filed his Complaint and paid a $120.00 filing fee on January 8, 1992. [1]. Plaintiff appears also to have filed a Motion for Leave to Proceed in Forma Pauperis on January 8, 1992, but his motion was never acted upon. [1]. On July 31, 1992, Plaintiff moved the Court for leave to

(b) is scheduled for next parole consideration within three or four months;

(c) has not been returned to prison for current incarceration as a revoked releasee less than three years prior to next parole consideration;

(d) has not been interviewed by a Board Member less than three years prior to next parole consideration month.

proceed in forma pauperis. [7]. In his motion, Plaintiff states that the Clerk of the Court informed him that despite his January 8, 1992 motion, he would have to pay the filing fee before his Complaint would be filed. On August 19, 1992, the Court granted Plaintiff's motion to proceed in forma pauperis. [11]. Plaintiff has informed the Court that he has not received a refund of his $120.00, and moves the Court to provide him with same. The Court now orders the Clerk of the Court to refund Plaintiff's filing fee of $120.00.

CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment [13], and DENIES Plaintiff's Motion for Summary Judgment [12]. The Court also DENIES Plaintiff's Motion to Extend Time to File a Pre-Trial Order. [15]. Finally, the Court GRANTS Plaintiff's Motion for a Refund of his Filing Fee, and ORDERS the Clerk of the Court to refund $120.00 to Plaintiff. There remain no claims before this Court.

So ORDERED.

(2) Inmates whose case is considered for parole under Parole Guidelines will be interviewed by a Board Member if still incarcerated three years past the guideline recommended release date and each three years thereafter, provided his discharge date is at least six months past the scheduled interview.