**C.T. AKINS, Jay M. Fate, Plaintiffs–Appellants,**

**Michael Schroeder, Plaintiff,**

v.

**Wayne SNOW, Jr., Chairman State Board of Pardons & Paroles, Defendant–Appellee.**

No. 89–8622.

United States Court of Appeals, Eleventh Circuit.

Feb. 7, 1991.

---

Howard O. Hunter, Dean, Emory Law School, Atlanta, Ga., for plaintiffs-appellants.

Michael J. Bowers, Atty. Gen., William Bradley Hill, Jr., Herman Perry Michael, Daryl Alan Robinson, Carlton LaTain Kell, Atlanta, Ga., for defendant-appellee.

Before EDMONDSON and COX, Circuit Judges, and WISDOM *, Senior Circuit Judge.

COX, Circuit Judge:

## I. FACTS AND PROCEDURAL HISTORY

In October 1988, C.T. Akins and Jay Fate[1] filed this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief or in the alternative compensatory and punitive damages, against Wayne Snow, chairman of the Georgia State Board of Pardons and Paroles (the Board).[2] As

---

\* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1.** Michael Schroeder was also a party to the suit, but he did not appeal.

**2.** Because Akins and Fate challenge the parole decision process, specifically their eligibility for parole, and not the denial of parole, they may properly bring a claim under § 1983 without first bringing a habeas corpus claim and exhausting their state remedies. *See Gwin v.*

the basis for their section 1983 action, Akins and Fate allege that the Board's application of the 1986 parole rules and regulations to their cases violates their substantive due process rights under the Fourteenth Amendment and the *ex post facto* clause of the United States Constitution, art. I, § 10, cl. 1.

Both appellants in this case are inmates serving life terms at the Georgia State Prison in Reidsville, Georgia. The crime for which Akins was convicted was committed in 1972; the crime for which Fate was convicted was committed in 1977. When these crimes were committed, the Board's rules required the Board to initially consider an inmate serving a life term for parole after serving seven years of his life sentence.[3] If the Board denied an inmate parole at this initial hearing, the rules required the Board thereafter to hold an annual hearing to reconsider its parole decision.[4]

In September 1980, the Board held Akins's initial parole hearing and denied him parole. The Board reconsidered Akins for parole annually through 1986. In September 1986, the Board, pursuant to new rules, scheduled Akins for another parole reconsideration hearing in 1994.[5] These new rules only require the Board to reconsider an inmate for parole once every eight years after the denial of parole.[6]

Fate received his first parole consideration hearing in July 1984. The Board refused to grant him parole at that time and deferred reconsideration of this decision until the following year. At the subsequent reconsideration hearing the Board again denied Fate parole but this time, pursuant to the new rules, did not schedule another reconsideration hearing until 1993.

After the Board failed to hold a number of annual reconsideration hearings for Akins and Fate, they filed this action alleging a due process and *ex post facto* clause violation. The district court, in ruling on cross-motions for summary judgment, denied Akins's and Fate's motion but granted Snow's summary judgment motion. On the due process claim, the court held that Akins and Fate did not have, under the original or revised rules, a "liberty interest nor a protectable expectation of release." R.1–13–3. On the ex post facto claim, the court held that "as a matter of law, the postponement of reconsideration for parole is not a punishment subject to the *ex post facto* clause." *Id.* The district court based its *ex post facto* ruling upon *Damiano v. Florida Parole and Probation Commission,* 785 F.2d 929 (11th Cir.1986), in which this court held that parole postponement is "merely a disappointment rather than a punishment...." *Id.* at 933.[7] Akins and Fate only appeal the district court's ruling relating to their *ex post facto* claim.

## II. DISCUSSION

■ An appellate court reviews summary judgment decisions *de novo. Tackitt v. Prudential Ins. Co.,* 758 F.2d 1572, 1574 (11th Cir.1985). Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c).

The Constitution provides that "[n]o State shall ... pass any ... ex post facto Law...." U.S. Const. art. I, § 10, cl. 1. At the time the Constitution was drafted, the phrase "ex post facto law" was a term of art with a well-established meaning. *See Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798). Justice Chase's opinion in *Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798), identified several legislative acts that clearly implicated the core concerns of the various *ex post facto* clauses

*Snow,* 870 F.2d 616 (11th Cir.1989). Snow makes no argument to the contrary.

**3.** Georgia State Board of Pardon and Paroles rules and regulations (Board rules), ch. 475–3.-06(3) (1972).

**4.** Board rules, ch. 475–3–.05(2) (1969).

**5.** Board rules, ch. 475–3–.05(2) (1986).

**6.** *Id.*

**7.** We find the court's reliance on *Damiano* misplaced. *Damiano* involved a change in the factors used to determine if a prisoner would be released on parole. *Id.* at 931. *Damiano* did not involve an alleged change in parole eligibility.

that existed at the time of the Constitution's framing. One such legislative act he noted was: "Every law that *changes the punishment,* and *inflicts a greater punishment,* than the law annexed to the crime when committed." *Id.* at 390, 1 L.Ed. at 650 (opinion of Chase, J.) (emphasis in original). The Supreme Court's ex post facto rulings have been faithful to the original principle that "every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed," violates the *ex post facto* provision. *See Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987); *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Rooney v. North Dakota,* 196 U.S. 319, 324–325, 25 S.Ct. 264, 265–266, 49 L.Ed. 494 (1905); *In re Medley,* 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890); *Cummings v. Missouri,* 71 U.S. 277, 325–326, 18 L.Ed. 356, 363–364 (1867); *Calder v. Bull,* 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648, 650 (1798).

Before addressing the substantive issue of whether the Board's action violates the *ex post facto* clause, three preliminary issues must be discussed. First, are the Board's rules laws within the meaning of the *ex post facto* clause? Second, are parole reconsideration hearings a part of parole eligibility? Third, are the *ex post facto* clause's restrictions applicable to a change in parole eligibility?

Regarding the first preliminary issue, the Georgia legislature has delegated to the Board the authority to enact "rules and regulations" concerning parole. Ga.Code Ann. § 77–525 (Harrison 1969); O.C.G.A. § 42–9–45 (1989). This delegation mandates that the Board's rules and regulations "contain an eligibility requirement for parole which shall set forth the time when the automatic initial consideration for parole of inmates under the jurisdiction of

the Department of Corrections shall take place and also the times at which periodic reconsideration thereafter shall take place." *Id.*

If the Georgia legislature had passed the parole reconsideration rule at issue, the rule clearly would be a law and the *ex post facto* clause would obviously apply. The inquiry is whether the Board's rule is the equivalent of a law for *ex post facto* purposes.

■ The effect of the legislature's delegation is to grant the Board quasi-legislative power. The Board's rules and regulations have the force and effect of law. Since the legislature delegated to the Board the power to enact rules and regulations concerning parole reconsideration, the rules or regulations enacted by the Board are subject to the *ex post facto* clause's prohibitions. Decisions in other circuits, involving similar circumstances, support this conclusion. *See Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 174 (7th Cir.1979) ("This rule must be viewed as tantamount to a statute for the purpose of determining whether its application to Rodriguez runs afoul of the *ex post facto* clause."); *Love v. Fitzharris,* 460 F.2d 382, 385 (9th Cir.1972), *vacated,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973) (a state parole authority's change in the interpretation of a parole eligibility provision is subject to *ex post facto* constraints because the agency's interpretation had the effect of law).

■ The second preliminary issue concerns whether a parole reconsideration hearing is a part of a prisoner's parole eligibility. Under the Georgia parole system, an inmate serving a life sentence becomes eligible for parole consideration after serving seven years of his sentence. This means that the inmate is given a parole consideration hearing,[8] and the Board then determines if he is suitable for release based on a number of factors. If the inmate is denied parole at this initial hearing

---

**8.** We use the terms parole consideration hearing and parole reconsideration hearing to include the Board's interview of the inmate, the Board's investigation of the inmate, the Board's discussion of the inmate and the Board's subsequent decision whether the inmate should be paroled. *See, e.g.,* O.C.G.A. § 42–9–43 (1989).

the Board schedules a parole reconsideration hearing at a later date.[9] If the inmate is denied parole at the reconsideration hearing, the Board schedules the inmate for another reconsideration hearing at a later date. Since the Board is required to hold some type of parole reconsideration hearing **before** granting parole,[10] an inmate is effectively **ineligible** for parole between two parole reconsideration hearings. Because an inmate is not paroled without a parole reconsideration hearing, the hearing must be considered an essential part of parole eligibility.

The conclusion that a parole reconsideration hearing is an essential part of parole eligibility under Georgia's parole system is supported by the language of the statute delegating to the Board the power to enact rules and regulations concerning parole. The statute provides that "[s]uch rules and regulations shall contain *an eligibility requirement for parole which shall set forth* the time when the automatic initial consideration of inmates ... shall take place and also *the times at which periodic reconsideration thereafter shall take place....*" Ga.Code Ann. § 77–525 (Harrison 1969) (emphasis added); *see also* O.C. G.A. § 42–9–45 (1989). This language indicates that the legislature considers a parole reconsideration hearing an essential and important part of parole eligibility.

The Seventh Circuit's decision in *Rodriguez v. United States Parole Commission*, 594 F.2d 170 (7th Cir.1979), also supports our conclusion. Rodriguez was convicted in 1977 for crimes he committed in 1974 and 1975. He was sentenced to a maximum of two years, which made him technically eligible for immediate parole. In 1974 and 1975, when Rodriguez committed his crimes, the applicable parole regulations required that prisoners receive an immediate initial hearing, at which almost no one was ever granted parole, and a subsequent hearing after serving one-third of their sentence. After Rodriguez committed his crimes, the applicable parole rules were amended. The amended parole rules eliminated the additional hearing at the one-third point and replaced it with additional review hearings that were to occur not less frequently than eighteen months after the initial hearing. The amended rules effectively prevented Rodriguez from being paroled, since almost no one was paroled at the initial hearing.

The *Rodriguez* court held that such a change in parole hearings violated the *ex post facto* clause. The court noted that "[a]t the time of the offense for which Rodriguez was convicted, any 'punishment' prescribed included such an opportunity for parole release. The retroactive elimination of this opportunity is plainly to his 'substantial disadvantage.'" *Id.* at 175 (footnotes omitted). The court concluded that "deprivation of all opportunity to be released on parole ... comes within the scope of [the] clause." *Id.* In reaching this conclusion, the court reasoned that "[e]ligibility in the abstract is useless; only an unusual prisoner could be expected to think that he is not suffering a penalty when even though he is eligible for parole and might be released if granted a hearing, he is denied that hearing." *Id.* at 176. This language demonstrates the *Rodriguez* court's belief that a parole hearing is an essential element of parole eligibility. Therefore, *Rodriguez* implies that without the opportunity for a parole hearing an inmate is not, in any realistic meaning of the term, eligible for parole.

We realize that *Rodriguez* involved a change that effectively eliminated all opportunity for parole release, but we think the specific disadvantage is incidental. The key to the court's conclusion was that Rodriguez was deprived of an opportunity for parole that existed prior to the alteration of the parole rules. *See Watson v. Estelle*, 859 F.2d 105, 109 (9th Cir.1988), *vacated*, 886 F.2d 1093 (9th Cir.1989).

---

**9.** The only distinction between a parole consideration hearing and a parole reconsideration hearing is that a parole consideration hearing is the term used to describe an inmate's initial parole hearing and a parole reconsideration hearing is the term used to describe any subsequent parole hearing.

**10.** *See* O.C.G.A. §§ 42–9–41, 42–9–42, and 42–9–43.

■ The third preliminary issue concerns whether the *ex post facto* clause applies to a change in parole eligibility. The Supreme Court never has held that parole eligibility is part of a prisoner's sentence subject to the prohibitions of the *ex post facto* clause. The Court has commented in *dicta* that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present a serious question under the *ex post facto* clause...." *Warden v. Marrero*, 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974) (citations omitted). This court's predecessor implied that parole eligibility is a part of a prisoner's sentence by stating any "official po[s]t-sentence action that delays eligibility for supervised release runs afoul of the ex post facto proscription." *United States ex rel. Graham v. United States Parole Comm'n*, 629 F.2d 1040, 1043 (5th Cir.1980) (quoting *Shepard v. Taylor*, 556 F.2d 648, 654 (2nd Cir.1977)).[11] Other courts also have held that parole eligibility is part of the sentence imposed as punishment for a crime and therefore subject to the prohibitions of the *ex post facto* clause. *See Fender v. Thompson*, 883 F.2d 303, 306 (4th Cir.1989) (retrospective application of a statute changing parole eligibility would substantially alter the consequences attached to a crime already completed and therefore change the punishment for prisoners who committed crimes before the statute's enactment); *Schwartz v. Muncy*, 834 F.2d 396, 398 n. 8 (4th Cir.1987) ("parole eligibility is part of the law annexed to the crime at the time of a person's offense"); *Beebe v. Phelps*, 650 F.2d 774, 777 (5th Cir. Unit A 1981) ("parole eligibility is considered an integral part of any sentence"); *Rodriguez v. United States Parole Comm'n*, 594 F.2d 170, 176 (7th Cir. 1979) ("the possibility of parole [is] an element of punishment"); *Breest v. Helgemoe*, 579 F.2d 95, 102 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978) ("parole eligibility constitutes part of punishment"). We agree with these holdings; for *ex post facto* purposes,

parole eligibility must be considered part of any sentence.

Having concluded that the Board's rules are laws within the meaning of the *ex post facto* clause; that parole reconsideration hearings are an essential part of parole eligibility; and that parole eligibility is part of a sentence for *ex post facto* purposes, we now consider whether the Board's action in amending its rules regarding parole reconsideration hearings violates the *ex post facto* clause. Snow argues that the amended rules do not violate the clause because Akins and Fate do not have any entitlement or vested right to parole. Appellee's Brief at 4. Snow misconstrues the scope of the *ex post facto* clause. The Supreme Court in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), rejected the contention that the *ex post facto* clause is violated only when the law in question affects a vested interest. The *Weaver* Court stated that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition ... The presence or absence of an affirmative, enforceable right is not relevant ... to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Id.* at 29–30, 101 S.Ct. at 964–65 (footnote omitted).

■ The Supreme Court has developed a two-pronged analysis in evaluating a law under the *ex post facto* clause. The first prong requires that the law be "retrospective, that is, it must apply to events occurring before its enactment...." *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964 (1981) (footnote omitted). The second prong requires that the law "disadvantage the offender affected by it." *Id.* (footnote omitted).

■ In determining whether a law is retrospective, a court must look to the date when the crime was committed. *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965. If the law alters the legal consequences of an act after the act is completed, the law is retro-

**11.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

spective. *Id.* Snow does not dispute that the Board's rules are being retrospectively applied to Akins and Fate. Akins committed his crime in 1972 and Fate committed his crime in 1977. In both years the Board's rules required an annual reconsideration hearing. In 1986, the Board amended its rules to provide for a reconsideration hearing at least every eight years after a denial of parole. By applying the new rules to Akins and Fate, the Board effectively altered the consequences of their crimes after they were completed.

The second prong of the Supreme Court's test requires us to determine whether the Board's amended rules disadvantage Akins and Fate. The Board's rules "need not technically increase the punishment" attached to Akins's and Fate's crime but only "substantially disadvantage" Akins's and Fate's parole eligibility. *Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937).

The Board's 1986 rules alter the period between parole reconsideration hearings that existed when Akins and Fate committed their crimes. At the time of Akins's and Fate's crimes, the Board's rules provided the opportunity for a parole reconsideration hearing every year after a denial of parole. Now the Board's rules provide the opportunity for a parole reconsideration hearing only once every eight years after a denial of parole. Because we have already concluded that a parole reconsideration hearing is an essential part of parole eligibility under Georgia's parole system, the Board's alteration of the period between parole reconsideration hearings also alters a prisoner's parole eligibility. The Board, in altering the period between a parole reconsideration hearing and a subsequent parole reconsideration hearing, has in-creased the time an inmate must spend in prison before he can again become eligible for parole. This change in parole eligibility substantially disadvantages a prisoner.[12]

If the Board had extended the date of an inmate's initial parole hearing the change would violate the *ex post facto* clause. *See Schwartz v. Muncy,* 834 F.2d 396 (4th Cir. 1987). By making such a change the Board would require an inmate to spend more time in prison before he became eligible for parole. There is no principled distinction between changing the date of the initial hearing and changing the period between parole reconsideration hearings. Both substantially disadvantage a prisoner's parole eligibility and therefore his opportunity for parole.

The Board argues that even if the new rule disadvantages Akins and Fate by changing their parole eligibility, the change is a procedural one not prohibited by the *ex post facto* clause. The Supreme Court has held that even a retrospective law that is disadvantageous will not violate the clause if the change concerns "legislative control of remedies and modes of procedures which do not affect matters of substance." *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). However, the Court has noted that the distinction between procedural and substantive changes is often quite elusive. *Miller v. Florida,* 482 U.S. 423, 433–35, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987). A law that is seemingly procedural will still violate the clause if the law alters a substantive right. *Weaver,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12 (1981).

In *Rodriguez v. United States Parole Commission,* 594 F.2d 170 (7th Cir.1979), the Seventh Circuit rejected the argument

---

**12.** The courts that have dealt with the issue of a change in frequency of parole hearings are divided as to whether such a change can violate the *ex post facto* clause. *Compare Watson v. Estelle,* 859 F.2d 105 (9th Cir.1988), *vacated,* 886 F.2d 1093 (9th Cir.1989) (change in parole hearing date violates *ex post facto* clause); *Rodriguez v. United States Parole Comm'n,* 594 F.2d 170 (7th Cir.1979) (change in frequency of parole hearings violates *ex post facto* clause); *Upshaw v. Klincar,* No. 89–3133, 1990 WL 114476 (N.D. Ill. July 30, 1990) (WESTLAW, Allfeds library, Dist file) (change in parole hearings can violate *ex post facto* clause); *Lett v. Klincar,* 151 Ill. App.3d 783, 104 Ill.Dec. 422, 502 N.E.2d 1082 (1986) (elimination of annual parole hearing violates *ex post facto* clause); *with In re Jackson,* 39 Cal.3d 464, 703 P.2d 100, 216 Cal.Rptr. 760 (1985) (change in frequency of parole hearings does not violate *ex post facto* clause); *Gunter v. State,* 298 S.C. 113, 378 S.E.2d 443 (1989) (change from annual to biannual parole hearing does not violate *ex post facto* clause).

that the change in the date of a parole reconsideration hearing was only a procedural change not subject to the *ex post facto* clause. The court stated that "neither the right to a meaningful hearing nor the abrogation of the right is 'procedural' as that term is used in *ex post facto* law." *Id.* at 175 n. 7. The change "did not simply alter 'the methods employed' ... in determining whether an eligible prisoner would be released on parole." *Id.* (citing *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

We agree with the *Rodriguez* court's reasoning and conclude that the Board's new rule, regarding the date of reconsideration hearings, is not merely a procedural change. The elimination of a parole reconsideration hearing does not simply alter the methods employed to determine whether an otherwise eligible inmate is granted parole. A parole reconsideration hearing is both in law and in practice an important component of a prisoner's parole eligibility. The change is a substantive one that effectively disadvantages an inmate.

We therefore hold that the elimination of an annual parole reconsideration hearing can as a matter of law violate the *ex post facto* clause.

The district court found that there was no genuine issue of material fact and therefore that Snow was entitled to judgment as a matter of law. The record establishes that at the time Akins and Fate committed their crimes, the Board's rules required that Akins and Fate be given an annual reconsideration hearing after a denial of parole. The record also establishes that since 1986 Akins and Fate have not had an annual reconsideration hearing. Based on these facts and our discussion of the law, we find that the Board's actions violated the *ex post facto* clause. Therefore, Akins and Fate were entitled to summary judgment as a matter of law and the district court erred by not granting their summary judgment motion.[13]

**13.** Akins and Fate are entitled to appropriate relief. The district court has not yet addressed

### III. CONCLUSION

We REVERSE the district court's grant of summary judgment for Snow and REMAND the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

what relief is appropriate in this case, and therefore we do not address that issue.