**Jerry L. OGLESBY, Plaintiff,**

v.

**Walter RAY, et al., Defendants.**

**No. CIV.A. 1:97–cv–527TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 3, 1998.

Jerry L. Oglesby, Hardwick, GA, Pro se.

John C. Jones, Kathleen Mary Pacious, Thurbert E. Baker, David Joel Marmins, Of-

fice of State Attorney General, Atlanta, GA, for Defendants.

### ORDER

THRASH, District Judge.

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. No. 8] and Motion for Protective Order [Doc. No. 11].

### I. BACKGROUND

On May 11, 1976, Plaintiff Jerry Oglesby was convicted in the Walton County Superior Court of murder, armed robbery, and theft by taking. He received a life sentence on the murder conviction. He received a life sentence to run consecutively with the murder conviction for the armed robbery conviction and ten years to run concurrently for the theft by taking conviction. The Plaintiff had his initial parole eligibility hearing in February of 1983. At that time, the Georgia State Board of Pardons and Paroles ("Board") denied parole for the Plaintiff and set him off two years for reconsideration. In February of 1985, the Board again denied parole. It then began to reconsider Plaintiff's eligibility for parole on an annual basis. This continued until February of 1996. In each of the annual reviews, the Board denied parole to Plaintiff.

In 1995, the Board adopted a new policy in life sentence cases regarding the interval period for reconsidering parole after an initial denial. (Doc. No. 8, Exhs.2, 4). The Board enacted this amended policy in the wake of the Supreme Court's decision in *California Dept. of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). (Doc. No. 8, Exhs.3, 4). The Board's new policy provides in pertinent part:

> It is the policy of the Board that all Life Sentence Cases denied parole may be set for reconsideration up to a maximum of eight years from the date of last denial when, in the Board's determination, it is not reasonable to expect that parole would be granted during the intervening years. Inmates set-off under this policy may receive expedited parole reviews in the event of a change in their circumstance or where

the Board receives new information that would warrant a sooner review.

(Doc. No. 8, Exh. 2). The 1995 amended policy defines "Life Sentence Cases" as "all cases with a controlling Life Sentence which are eligible for parole consideration inclusive of those Life Sentences for which parole was previously granted but subsequently revoked." (*Id.*). At the time the Board members vote to deny parole in a life sentence case, they must indicate the interval period the inmate must serve before being next considered for parole. (*Id.*) When the Board denied the Plaintiff's parole in February of 1996, the Board found that the circumstances of the Plaintiff's multiple violent offenses made it not reasonably likely that he would be paroled within eight years of the 1996 reconsideration. (*Id.,* Exh. 1; Amideo Aff., ¶ 9). By letter dated April 18, 1996, the Board informed the Plaintiff of its decision to deny parole and that it would next consider him for parole in February of 2004. (*Id.,* Exh. 1).

On February 28, 1997, the Plaintiff filed this *pro se* action under § 1983 against the members of the Board. (Doc. 1). He claims that the Board's decision pursuant to the 1995 amended policy not to reconsider his eligibility for parole until 2004 is a retroactive application of a rule in violation of the *Ex Post Facto* Clause of the United States Constitution. The Defendants have filed a Motion for Summary judgment [Doc. No. 8], contending that the 1995 amended policy, which reduced the frequency of parole reconsiderations, does not violate the *Ex Post Facto* Clause. They rely on *Morales* in which the Supreme Court upheld the retroactive application of a California statute permitting the parole board to defer parole suitability hearings for up to three years for inmates convicted of more ... an one offense involving the taking of a life. *Morales,* 514 U.S. at 504–13, 115 S.Ct. at 1601–05. The Plaintiff responds that the 1995 amended policy here is materially different than the California statute at issue in *Morales,* and that this case is therefore not governed by *Morales.* The Plaintiff further argues that genuine issues of material fact exist as to the effective date of the 1995 amended policy and whether the amended policy was properly

adopted under O.C.G.A. § 50–13–4. The Defendants have filed a Motion for Protective Order [Doc. No. 11]. They request the Court to enter an order pursuant to Federal Rule of Civil Procedure 26(c) directing that further discovery be stayed pending the resolution of the Defendants' Motion for Summary Judgment. The Plaintiff has not responded to this motion.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The party seeking summary judgment must first identify grounds that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Mere denials or allegations by the nonmovant in the form of legal conclusions and unsupported by any specific facts have no probative value and are therefore insufficient to create issues of material fact that would preclude summary judgment. *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir.1976).

## III. DISCUSSION

 The Constitution expressly prohibits states from enacting *ex post facto* laws. U.S. Const. Art. I, § 10, cl. 1. An *ex post facto* law is "any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24,

28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 71 U.S. 277, 18 L.Ed. 356, 4 Wall. 277 (1866)). "The focus of the *ex post facto* inquiry is not on whether a legislative change produces some sort of 'disadvantage' [to covered offenders] ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales,* 514 U.S. at 506 n. 3, 115 S.Ct. at 1602 n. 3. The *Ex Post Facto* Clause assures that (1) legislative acts give fair warning of their effect so as to permit individuals to rely on their meaning until explicitly changed and (2) governmental power is restricted by restraining arbitrary and potentially vindictive legislation. *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 964. A statute may violate the *Ex Post Facto* Clause "even if it alters punitive conditions outside the sentence ... [where] the statute substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.'" *Id.* at 32–33, 101 S.Ct. at 966.

In this case, the question is whether the 1995 amended policy of the Board regarding parole reconsideration frequency increases the "punishment" attached to the Plaintiff's crime. In 1991, the Eleventh Circuit in *Akins v. Snow,* 922 F.2d 1558 (11th Cir.); *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991), considered whether a 1986 amendment to the Board rules reducing the frequency of parole reconsiderations in life sentence cases from annually to every eight years constituted a violation of the *Ex Post Facto* Clause. The Eleventh Circuit first concluded that Board rules are laws within the meaning of the *Ex Post Facto* Clause, that parole reconsideration hearings are an essential part of parole eligibility, and that parole eligibility is part of a sentence for *ex post facto* purposes. *Id.* at 1563. The Eleventh Circuit then concluded that the retroactive application of the 1986 amendment did constitute an *ex post facto* violation. *Id.* at 1563–65. The court reasoned that the 1986 amendment altered the consequences of the plaintiffs' crimes after they were completed and is a substantial change effectively disadvantaging an inmate. *Id.* The court relied upon *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964, in holding that an *ex post facto* viola-

tion occurred where there was a substantial disadvantage to the inmate under the new policy. *Akins,* at 922 F.2d at 1564. If *Akins* is controlling precedent, the Defendants' Motion for Summary Judgment should be denied.

After *Akins,* the Supreme Court in *Morales* considered an *ex post facto* challenge to a California statute that permitted the California parole board to defer parole suitability hearings for up to three years for inmates convicted of more than one offense involving the taking of a life. The deferral was allowed if the parole board specifically found that it was not reasonable to expect that parole would otherwise be granted during the intervening years and stated the basis for such a finding. *Morales,* 514 U.S. at 503, 115 S.Ct. at 1600. The *Morales* Court emphasized that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the [ex post facto] prohibition must be a matter of degree.'" *Id.* at 509, 115 S.Ct. at 1603 (quoting *Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)). Rather than articulating a single formula for identifying those legislative changes having a significant impact on substantive punishments, the Supreme Court stated that it was its task to determine whether the legislative change produced "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* The Supreme Court declined to express any view "as to the constitutionality of any of a number of other statutes that might alter the timing of parole hearings under circumstances different from those present" in *Morales. Id.* at 509 n. 5, 115 S.Ct. at 1603 n. 5.

In *Morales,* the Court held that a retroactive "disadvantage" to an inmate was not sufficient to constitute an *ex post facto* violation. It held that the focus of an *ex post facto* inquiry is whether the change "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id.* at 506 n. 3, 115 S.Ct. at 1602 n. 3. The Court then ruled that the retroactive application of the California parole eligibility statute did not violate the *Ex Post Facto* Clause. *Id.* at 504–13, 115 S.Ct. at 1601–05. According to the Supreme Court, that statute "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for the covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the *Ex Post Facto* Clause." *Id.* at 509, 115 S.Ct. at 1603. The Court identified several characteristics of the California statute that negated the risk of increasing the risk of punishment such as: (1) the statute applied only to a class of prisoners for whom the likelihood of release on parole is quite remote; (2) the parole board's authority was carefully tailored under the California statute by the requirement that the board make a particularized finding that it is not reasonable to expect that parole would be granted at a hearing during the period of deferral; (3) the California statute had no effect on the prisoner's initial parole hearing and only affected the timing of subsequent hearings; and (4) the parole board retained the authority to tailor the frequency of subsequent reconsideration hearings to the particular circumstances of the individual prisoner. *Id.* at 510–12, 115 S.Ct. at 1603–04. In addition, the Court observed that the statute's purpose was not to increase punishment but to reduce the expenditure of time and money on holding hearings "for prisoners who have no chance of being released." *Id.* at 507, 115 S.Ct. at 1602.

The decision in *Akins* is binding precedent in the Eleventh Circuit unless it has been overruled by the Eleventh Circuit *en banc* or the Supreme Court. *See United States v. Evans,* 910 F.2d 790, 797 (11th Cir.1990), *aff'd,* 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). The Eleventh Circuit itself has questioned the continued viability of *Akins* in light of *Morales. See Jones v. Georgia State Bd. Of Pardons and Paroles,* 59 F.3d 1145, 1149 n. 8 (1995). See also *Shabazz v. Gabry,* 123 F.3d 909, 915 (6th Cir.)(questioning continued viability of *Akins* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 1061, 140 L.Ed.2d 122 (1998); *Hill v. Jackson,* 64 F.3d 163 (4th Cir.1995). The fact that the Court in *Morales* explicitly rejected the "substantial disadvantage" standard relied upon by the Eleventh Circuit in *Akins* is of particular significance in this context. After careful consideration of the matter, the

Court concludes that *Akins* has been overruled by the Supreme Court and should not be followed in ruling upon the Defendants' Motion for Summary Judgment. The controlling law is the Supreme Court's decision in *Morales.*

■ In light of *Morales,* the Court concludes that the retroactive application of the 1995 amended parole eligibility policy does not violate the *Ex Post Facto* Clause. The 1995 amended policy contains several provisions that are similar or identical to the California statute considered in *Morales.* First, it applies only to a narrow class of inmates, those serving life sentences, for whom the possibility of parole is remote. (Doc. No. 8, Exh. 2). Second, the 1995 amended policy requires the Board to make a particularized determination that it is not reasonably likely that an inmate will be granted parole during the period of deferred consideration. Third, the 1995 amended policy has no effect on the inmate's initial parole review, and only affects subsequent reviews. Fourth, it allows for an inmate set-off to receive expedited parole reviews in the event of a change in his circumstance or where the Board receives new information that would warrant an earlier review. In contrast, the 1986 amendment in *Akins* did not provide a mechanism whereby an inmate could receive parole consideration during the intervening years between scheduled parole hearings. Finally, the 1995 amended policy serves the purpose of reducing the needless expenditure of time and money in holding hearings for those inmates with no chance of parole. There is no evidence in the Record to indicate that the amended policy was adopted for the purpose of enhancing punishment of inmates. As in *Morales,* the application of the 1995 amended policy to the Plaintiff creates "only the most speculative and attenuated risk of increasing the measure of punishment attached to the [Plaintiff's] crimes." *Morales,* 514 U.S. at 514, 115 S.Ct. at 1605; *see also Hill v. Jackson,* 64 F.3d 163, 168–170 (4th Cir.1995). Accordingly, it does not violate the Ex Post Facto Clause.

In the Complaint, the Plaintiff failed to assert valid § 1983 claims as to the effective date of the 1995 amended policy or whether it was properly enacted. These issues do not implicate the Plaintiff's federally protected rights. The Court, therefore, need not address whether there are any factual issues concerning these issues. In the absence of any genuine issues of material fact, the Defendants' Motion for Summary Judgment [Doc. No. 8] is GRANTED. Their Motion for Protective Order [Doc. No. 11] is DENIED as moot. The Clerk is directed to enter final judgment in favor of the Defendants.

SO ORDERED.