732 So.2d 461 (1999)
Herbert Lee TUFF, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-2950.
District Court of Appeal of Florida, Third District.
May 19, 1999.
Rehearing Denied June 16, 1999.
Herbert Lee Tuff, in proper person.
Robert A. Butterworth, Attorney General, and Wendy Benner-Leon, Assistant Attorney General, for appellee.
Before NESBITT, FLETCHER, and SHEVIN, JJ.
NESBITT, J.
Herbert Lee Tuff appeals the denial of his motion for post-conviction relief, which he incorrectly styled as a Rule 3.850 motion. In 1970, Tuff pled guilty to first-degree murder and received a life sentence. Tuff argues that the retroactive application of the 1997 amendment to section 947.174, Florida Statutes, to him was *462 unconstitutional as violative of the Ex Post Facto Clause of the United States and Florida Constitutions. This amendment altered the frequency of subsequent parole hearings for certain prisoners from every two years to every five years. Tuff's claim cannot be raised in a Rule 3.850 motion, as it is time-barred by that rule's two-year limit, nor can it be successfully raised in a Rule 3.800 motion, because a life sentence for first-degree murder is not an illegal sentence. Therefore, we treat Tuff's appeal as a petition for mandamus, and deny the petition for the reasons stated herein.
As stated above, in 1970 Tuff pled guilty to first-degree murder and received a life sentence. In 1979, he was paroled. In 1987, he violated his parole and was returned to prison. He was given a presumptive parole release date of August 30, 1992. However, Tuff accumulated a record of unsatisfactory conduct while in prison, including these infractions: disobeying an order; fighting (two occasions); lying to officials; and possession of contraband (two instances). Therefore, the parole commission set a new presumptive parole release date of December 30, 1997.
On October 27, 1997, the commission conducted an interview with Tuff, after which it decided not to release him on December 30, 1997, because it was unable to find a reasonable probability that, if released, he would conduct himself in a lawful manner. Thereafter, the commission scheduled Tuff's next parole interview for August 2002. The commission's reason for setting the interview for five years hence was that it found it was not reasonable to expect that Tuff would be granted parole in the intervening years due to the seriousness of his crime and his unsatisfactory prison conduct, which had included violent attacks on fellow inmates.
On June 1, 1997, or just before Tuff's October 1997 parole interview, the Legislature enacted chapter 97-289, S.B. 258, Laws of Florida, which changed the frequency of subsequent parole hearings for certain prisoners from every two years to every five years.[1] The relevant portion of this amendment was codified as section 947.174, Florida Statutes (1997):
§ 947.174. Subsequent [parole] interviews.
(1)(b) For any inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25 year minimum mandatory sentence ..., and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing.
Tuff challenges the retroactive application of this statute to him, claiming it to be an Ex Post Facto violation. We disagree.
This particular issue appears to be one of first impression in Florida. The United States Supreme Court's decision in California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), controls. Morales held that an amendment to California law which decreased the frequency of parole hearings for certain prisoners was not an Ex Post Facto violation. See Morales, 514 U.S. at 509, 115 S.Ct. 1597. The Court's rationale was that when such an amendment was narrowly structured and afforded due process protections, such as a hearing and written findings, it did not constitute "increased punishment" but simply represented a change in the method by which parole eligibility dates would *463 be established for a limited class of prisoners. See id. at 506-07, 115 S.Ct. 1597. As the Florida statute at issue here likewise applies only to a limited class of prisoners and affords the procedural safeguards mentioned in Morales, we hold that it likewise does not violate the Ex Post Facto Clause.
In 1980, while on parole for an earlier murder, Morales committed a second murder. He was convicted and sentenced to 15 years to life. The California parole board held his initial parole hearing in 1989 and determined that he was not eligible for parole.[2] Under the law in place at the time of Morales's crime, he would have been entitled to subsequent parole hearings annually. However, the law was amended in 1981 to allow the parole board to defer these subsequent hearings for up to three years if the prisoner had been convicted of "more than one offense which involves the taking of a life" and if the board "finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." Cal.Penal Code Ann. § 3041.5(b)(2) (West 1982).[3] The board determined that it was not reasonable to expect that Morales would be found suitable for parole in 1990 or 1991, and pursuant to the 1981 amendment, it scheduled Morales's next hearing for 1992. See id. at 500, 115 S.Ct. 1597.
Morales challenged the board's decision as unconstitutional, in violation of the Ex Post Facto Clause. The Supreme Court disagreed, holding that the amendment did not increase the "punishment" attached to Morales's crime and, therefore, that there was no Ex Post Facto violation by its retroactive application to Morales. See id. at 507, 115 S.Ct. 1597. Further, the Court found that the amendment was narrowly tailored, as it: (1) affected only a small class of violent prisoners; (2) affected the timing only of subsequent parole hearings (not the initial hearing); (3) called for a hearing on the matter; (4) applied only when the parole board found that the prisoner was unsuitable for parole and that it was "not reasonable to expect that parole would be granted" in the following years; and (5) had to be supported by written findings. See id. at 509, 115 S.Ct. 1597.
The California law challenged (and ultimately upheld) in Morales is quite similar to section 947.174, Florida Statutes (1997). The Florida statute applies to a limited number of inmates, though it does apply to more inmates than the California statute. The Florida statute only applies to inmates convicted of murder, attempted murder, sexual battery, attempted sexual battery, or whose sentence is 25 years minimum mandatory. See § 947.174, Fla. Stat. (1997). Moreover, as in Morales, the Florida statute is narrowly constructed: (1) it affects the timing only of subsequent (not initial) parole hearings; (2) it requires a hearing on the matter; (3) it applies only when the parole commission finds that "it is not reasonable to expect that parole will be granted at a hearing during the following [five] years"; and (4) it requires the commission to state the bases of its decision in writing. See id.
The Florida parole commission's comprehensive written report of its October *464 27, 1997, interview with Tuff states, in relevant part:
The Commission has decided NOT to authorize your [December 30, 1997] Effective Parole Release Date. After reviewing all the information in your Department of Corrections' file, the Commission has been unable to find that there is a reasonable probability that, if you are released, you will live and conduct yourself as a respectable and law-abiding person and that your release would be compatible with your own welfare and the welfare of society. This action is based upon the following information: ... the inmate was convicted and sentenced ... for a Life term for the offense of murder in the first degree [a description of the facts of the crime follow] .... during his incarceration for [this] offense of conviction, the inmate has a record of unsatisfactory institutional conduct [a description of Tuff's infractions follow]... The Commission finds that your next interview date shall be within 5 years, rather than within 2 years, from your last interview based on your conviction/sentence for Murder in the First Degree and the Commission's finding that it is not reasonable to expect that you will be granted parole during the following years. The basis for this finding is as follows: 1. The inmate has a history of assaultive or violent behavior. 2. Poor, disruptive or assaultive institutional conduct. 3. Any release may cause unreasonable risk to others.
It is apparent that the parole commission complied with the procedural safeguards inherent in section 947.174 and lauded by the Morales Court. Further, although the facts in the instant case differ somewhat from those in Morales, they are similar enough to draw comparisons between the cases. Morales's conviction was of his second murder; he received a sentence of 15 years to life. While Tuff's murder was his first, it was a first-degree murder and Tuff received a life sentence. Morales pled nolo contendere; Tuff pled guilty. Morales was denied parole, and was subjected to California's new three-year frequency for subsequent hearings (vice annual hearings), because of the "heinous nature" of his crime, his "record of violence and assaultive behavior," and because the board found that is was not reasonable to expect he would be granted parole within that three-year period. Tuff was denied parole, and was subjected to Florida's new five-year frequency for subsequent hearings, because of his violent crime, his "history of violent and assaultive behavior," his "poor, disruptive or assaultive institutional conduct," and because the commission found that, if released, there was no reasonable probability that Tuff would be a law-abiding citizen, that Tuff's release was incompatible with the welfare of society, and that it was not reasonable to expect that Tuff would be granted parole within the 5-year period. In our view, Tuff's situation was an even stronger case for application of the amended parole standards than was Morales's situation.
Neither the Eleventh Circuit's 1991 case Akins v. Snow, 922 F.2d 1558 (11th Cir. 1991), nor its recent (post-Morales) case, Jones v. Garner, 164 F.3d 589 (11th Cir. 1999), changes Morales's application to the instant case. In Akins, the 11th Circuit held that the Ex Post Facto Clause "applies to a change in parole eligibility, as parole eligibility must be considered part of any sentence." Akins, 922 F.2d at 1563. The Court struck down as unconstitutional the retroactive application of a Georgia rule decreasing the frequency of parole reconsideration hearings. However, as the 11th Circuit itself admitted, Akins's continued validity was called into question by Morales. See Jones[4]v. Georgia State *465 Board of Pardons and Paroles, 59 F.3d 1145, 1149 n. 8 (11th Cir.1995). After Morales, in 1999, the 11th Circuit was faced with another challenge to the same Georgia rule affecting parole hearing frequency as was challenged in Akins. In Jones v. Garner, 164 F.3d 589 (11th Cir. 1999), the Court, distinguishing Morales, struck down the retroactive application of Georgia's new rule (which decreased the frequency of subsequent parole hearings to every eight years), finding that it violated the Ex Post Facto Clause.
Jones had been convicted of murder and sentenced to life in prison. At the time of his crime, Georgia law required that a prisoner first be considered for parole after serving seven years and, if parole was not granted, every three years thereafter. After Jones was incarcerated, the State amended the law to allow reconsideration only every eight years after the initial denial of parole. See Jones, 164 F.3d at 590. Jones was initially denied parole, after seven years in 1989, and his next parole hearing was set for 1997, eight years later. However, when Akins struck down the eight-year intervals, Jones received subsequent hearings at three-year intervals, in 1992 and in 1995. Because of the Morales decision, the 1995 hearing (denying parole) rescheduled Jones's next hearing for 2003, eight years later. See id. Jones challenged this based on an Ex Post Facto argument.
While holding that the Georgia "eight-year" parole hearing rule violated the Ex Post Facto Clause, the Jones Court meticulously set about distinguishing Morales. By distinguishing Morales, the Eleventh Circuit in effect also distinguishes the instant case. The Court emphasized that the California law in Morales applied only to a class of prisoners "for whom the likelihood of release on parole is quite remote"those convicted of more than one offense involving the taking of a life, whereas the Georgia law in Jones cast a much wider net-applying to all inmates "serving life sentences."[5]See id. at 593-94. The Jones Court also pointed out that the California law was narrowly tailored to achieve its goal of reducing the costly and time-consuming responsibility of conducting frequent parole hearings for prisoners with virtually no chance of being released, in that it incorporated several safeguards to ensure due process and to ensure it did not result in sentence extensions. See id. at 594. The California law required a full hearing, written bases of its decision, and that the new three-year hearings would only come into effect where the Parole Board found that the prisoner was unsuitable for parole and where it was not reasonable to expect that he would be paroled in the intervening three years. The Georgia law was not so narrowly tailored, as it did not contain the procedural safeguards. See id. The Georgia rule read in its entirety:
Reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years. The Board will inform inmates denied parole of the reasons for such denial without disclosing confidential sources of information or possible discouraging diagnostic options.
Ga. Comp. R. & Regs. r. 475-3-05.(2). No hearing was required by the Georgia law, nor was the Board required to make particularized findings as to why the inmate could not reasonably be expected to get parole. Finally, the Court noted that the *466 California law established a default of an annual hearing, while allowing the Board to defer the hearing to every three years under the stated circumstances, while the Georgia law sets the default as "at least every 8 years." See Jones, 164 F.3d at 595.
Based on the differences cited above, the Jones Court struck down the Georgia rule as unconstitutional, stating:
Given the length of time that the Georgia provision requires inmates to wait between parole consideration hearings and the absence of safeguards such as a "full hearing and review of all the relevant facts" and an obligation on the part of the Board to state particularized facts relating to the inmate's likely future parole eligibility, we cannot conclude-as we must, to find no ex post facto violation-that the amended regulation "ha[s] neither the purpose nor the effect of increasing the quantum of punishment."
Jones, 164 F.3d at 596 (citations omitted).
The Florida law at issue here is much more like the California statute in Morales than like the Georgia rule in Jones. Section 947.174 applies to few prisoners, it has in place the Morales safeguards, and it defaults to hearings every two years while allowing the parole commission to defer this to five years in stated circumstances. It does not share the defects of the Georgia rule noted by the Eleventh Circuit. Therefore, following Morales, we conclude that section 947.174, Florida Statutes (1997), is not violative of the Ex Post Facto Clause, and deny Tuff's petition for mandamus, thereby affirming the trial court's denial of Tuff's motion.
NOTES
[1] At the time of Tuff's crime and until the 1997 amendment to section 947.174, subsequent parole interviews for all inmates were conducted every two years. See § 947.174, Fla. Stat. (1995).
[2] The Board found Morales unsuitable for parole for numerous reasons, including the heinous, atrocious, and cruel nature of his offense; the mutilation of the victim; his record of violence and assaultive behavior; and his commission of his second murder while on parole for his first. Morales, at 503, 115 S.Ct. 1597.
[3] The statute was again amended in 1990 to allow the board the alternative of deferring hearings for five years if the prisoner had been convicted of more than two murders, Cal.Penal Code Ann. § 3041.5(b)(2)(C) (West Supp.1994), 1990 Cal. Stats., ch. 1053, and in 1994 to extend that alternative to prisoners convicted of even a single murder, 1994 Cal. Stats., ch. 560.

The 5-year deferral applies "only to offenses committed before July 1, 1977, or on or after January 1, 1991," 1990 Cal. Stats., ch. 1053. Thus, it did not apply to Morales, whose crime was committed in 1980.
[4] This 1995 Jones case from the 11th Circuit involved James Huston Jones, and is not the same case as the 1999 Jones case, which involved Robert L. Jones. The 1995 Jones case upheld the retroactive application of a change in methods for calculating the tentative parole month for certain classes of prisoners, holding that this did not violate the Expost Facto Clause.
[5] This could include not only murderers, but also those convicted of: armed robbery; kidnapping for ransom; hijacking an aircraft; more than one count of child molestation; perjury that caused another to be sentenced to death; more than one count of possession or use of a machine gun, sawed-off shotgun, or firearm equipped with a silencer, during the commission of an enumerated offense; more than one count of manufacture, possession, sale or distribution of controlled substances.