81 F.3d 161
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry PHELPS, Plaintiff-Appellant,
v.
Charles TRAUGHBER, Rose Hill, Dawn Chase, Defendants-Appellees.
 No. 94-6318.
 United States Court of Appeals, Sixth Circuit.
 March 20, 1996.
 
 1
 Before: NELSON and BATCHELDER, Circuit Judges, and KATZ, District Judge.[1]
 
 
 2
 DAVID A. KATZ, District Judge.
 
 
 3
 Plaintiff-appellant is an inmate in the custody of the Tennessee Department of Correction. He appeals the District Court's dismissal of his complaint brought under 42 U.S.C. § 1983, challenging a decision of the Tennessee Board of Paroles ("Board") denying him parole and setting his next parole review date two years hence. The District Court held that such a claim was cognizable only under 28 U.S.C. § 2254, and dismissed the case sua sponte, without addressing the merits of Appellant's claim. We affirm the District Court's dismissal of Appellant's complaint, although on different reasoning.
 
 I. BACKGROUND
 
 4
 Appellant was convicted of a crime committed on February 11, 1985 and sentenced to thirty years incarceration. At the time of Appellant's crime, the Rules of the Tennessee Board of Paroles ("Rules") established a "presumption that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible." Tenn.Bd. of Parole Rules 1100-1-1-.06(1) (effective Jan. 1, 1980 to April 10, 1985). The Rules provided further that parole could be denied only for any one of four enumerated reasons, one of which was that "[t]here is a substantial indication that the resident will not conform to the conditions of his parole." Tenn.Bd. of Paroles Rule 1100-1-1-.06(3)(a) (effective Jan. 1, 1980-April 10, 1985).
 
 
 5
 This Court, in an opinion issued on December 28, 1984, held that the language of the above Rule created a liberty entitlement protected by the due process clause. Mayes v. Trammell, 751 F.2d 175, 179 (6th Cir.1984). In response to the Mayes decision, the Board amended its rules to eliminate any liberty interest by eliminating the language that created a presumption that a resident would be released on parole when he was first eligible. The new Rule became effective on April 10, 1985. It provides, in relevant part, that:
 
 
 6
 Before granting or denying parole, the Board may apply the following factors to each eligible inmate to assist it in determining whether such inmate will live and remain at liberty without violating the law or other conditions of his/her parole:
 
 
 7
 (a) The nature of the crime and its severity;
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (c) The inmate's institutional record;
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 (l) An objective advisory parole prediction guideline system to adequately assess the risk an inmate poses to society and his/her potential for parole success;
 
 
 14
 (m) Any other factors required by law to be considered or the Board determines to be relevant.
 
 
 15
 Tenn.Bd. of Parole Rule 1100-1-1-.06(1) (1985). The Board may deny parole if it determines that "[t]here is a substantial risk that the person will not conform to the conditions of release." Tenn.Bd. of Paroles Rule 1100-1-1-.06(3)(a) (1985). In Wright v. Trammell, 810 F.2d 589, 591 (6th Cir.1987), this Court found that the language of the amended Rule removed the constitutionally-protected liberty interest, and that the new rule pertained to all parole hearings conducted after its effective date.
 
 
 16
 On March 1, 1989, the Tennessee Board of Paroles adopted an administrative policy that whenever parole was denied an inmate, a further hearing would be held within one year. That policy was dropped on April 23, 1992.
 
 
 17
 Appellant had his fifth parole review on February 7, 1994. The review was conducted under the post-1985 procedures. The Board denied Appellant's application for parole on grounds of "high risk" and "disciplinary violations." Further review was not set for two years, until February, 1996.
 
 
 18
 Appellant then filed this action in the District Court under 42 U.S.C. § 1983. He argued that the Board's use of the post-1985 procedures to determine the frequency of his parole hearings and to determine his suitability for parole were unconstitutional ex post facto laws and violated his civil rights. The District Court (Nixon, J.) dismissed the case sua sponte, holding that Appellant could bring a claim arising from a parole decision only in a petition for federal habeas corpus relief under 28 U.S.C. § 2254. The District Court did not address the merits of Appellant's claim.
 
 
 19
 Appellant, proceeding pro se, raises three points of error on appeal. First, he argues that an inmate's challenge to parole procedures, as opposed to a final parole determination, is cognizable as a § 1983 action. Second, he argues that the Board's use of the post-1985 procedures to determine the frequency of his parole hearings is an unconstitutional ex post facto law. Finally, he argues that the Board's use of the post-1985 procedures to determine his suitability for parole is an unconstitutional ex post facto law.
 
 
 20
 II. COGNIZABILITY OF APPELLANT'S CLAIM UNDER 28 U.S.C. § 1983
 
 
 21
 Appellant's first argument is that the District Court should have addressed the merits of his claim. He argues that his challenge to the parole procedures can be brought under 28 U.S.C. § 1983. Ordinarily, a challenge to parole procedures is properly brought as a request for writ of habeas corpus. The Supreme Court has held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973). However, when a petitioner is not claiming entitlement to parole, i.e., when he would not automatically be entitled to release if he prevails on his claim, he may bring an action under § 1983. Allison v. Kyle, 66 F.3d 71 (5th Cir.1995); Roller v. Cavanaugh, 984 F.2d 120 (4th Cir.1993); Clark v. Thompson, 960 F.2d 663 (7th Cir.1992); Herrera v. Harkins, 949 F.2d 1096 (10th Cir.1991); Williams v. Ward, 556 F.2d 1143 (2d Cir.1977).
 
 
 22
 Accordingly, we must determine whether Appellant will automatically be entitled to release if he prevails on his claims. Appellant's substantive claims are that the Board's use of the post-1985 procedures to determine the frequency of his parole hearings and to determine his suitability for parole were unconstitutional ex post facto laws. If Appellant prevails, he will have the right to (1) annual parole hearings, and (2) consideration of his suitability for release under the pre-1985 parole rules. Neither circumstance gives Appellant an automatic entitlement to release. Since Appellant will not automatically be entitled to an immediate or speedier release if he prevails, his claim is cognizable under § 1983. The District Court should have considered Appellant's claims on their merits.
 
 
 23
 We need not remand the case to the District Court for disposition, however, since the claims raised by Appellant are issues of law and not dependent on fact-finding. We, therefore, address Appellant's claims on the merits.
 
 III. DEFERRAL OF PAROLE REVIEW
 
 24
 Appellant's first substantive claim is that he has a right to annual parole hearings under the Board policy in effect from 1989 to 1992. He argues that a statute allowing the parole board to defer parole hearings violates the Ex Post Facto Clause as to inmates who had a right to annual hearings at the time of their convictions and/or sentencing.
 
 
 25
 In support of his contention, Appellant cites to three cases from other Circuits holding that any retrospective law making parole hearings less accessible would effectively increase the prisoner's sentence and therefore violate the Ex Post Facto Clause. In Rodriguez v. United States Parole Commission, 594 F.2d 170 (7th Cir.1979), the Seventh Circuit found an ex post facto violation where there was a change in the timing of parole reconsideration from initial reconsideration at the one-third point in the prisoner's sentence to reconsideration every eighteen months, where the prisoner was serving a two-year sentence. The Eleventh Circuit held in Akins v. Snow, 922 F.2d 1558 (11th Cir.), cert. denied, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991) that a parole board rule reducing the frequency of parole reconsideration hearings from annually to once every eight years after denial of parole violated the Ex Post Facto Clause with respect to inmates who, when their crimes were committed, were entitled to annual reconsideration hearings. And in Roller v. Cavanaugh, 984 F.2d 120 (4th Cir.1993), the Fourth Circuit held that a statutory amendment that retroactively reduced the frequency of parole reconsideration hearings for violent offenders from an annual to a biennial basis was an unconstitutional ex post facto law with respect to an inmate who, when his crimes were committed, was entitled to annual reconsideration hearings.
 
 
 26
 Appellant's argument is unconvincing. After the cases cited by Appellant were decided, the Supreme Court held that an amendment retroactively reducing the frequency of parole reconsideration hearings does not necessarily violate the Ex Post Facto Clause. In California Dept. of Corrections v. Morales, --- U.S. ----, 115 S.Ct. 1597 (1995), the prisoner had been entitled, at the time of his conviction, to annual reconsideration hearings after parole was denied. The law was subsequently changed to allow the parole board to defer subsequent hearings for up to three years for a prisoner convicted of more than one offense involving the taking of a life. The Supreme Court held that the amended law's application to prisoners who committed their crimes before it was enacted did not violate the Ex Post Facto Clause.
 
 
 27
 The Court, while declining to articulate a "formula" for identifying what legislative adjustments would be of sufficient moment to fall within the constitutional prohibition, set forth three factors it found dispositive in that case. First, the amendment applied only to a class of prisoners for whom the likelihood of release on parole was remote. Id. at 1603. Second, the amendment affected the timing only of reconsideration hearings; it had no effect on the date of any prisoner's initial parole suitability hearing. Id. at 1604. Third, the parole board retained the authority to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner. Id. On these facts, the Court found that the amendment created only a speculative and attenuated risk of increasing the measure of the petitioner's punishment, and therefore did not violate the Ex Post Facto Clause. Id. at 1603.
 
 
 28
 Applying the factors identified by the Supreme Court to the facts of this case, it is evident that the amended Tennessee Board of Paroles' procedures do not violate the Ex Post Facto Clause as applied to Appellant. Appellant is a prisoner for whom the likelihood of release on parole is remote. It is undisputed that this is the fifth time to date Appellant has been found unsuitable for parole in his ten-year incarceration. The amended procedure can thus be seen "as a means to relieve the [Board] from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no chance of being released." Id. at 1604 (citation omitted). Petitioner does not allege that the timing of his initial parole suitability hearing was affected by the change in the law. And it appears from the record that the parole board tailored the frequency of subsequent suitability hearings to Appellant's particular circumstances. Furthermore, Appellant did not even have a right to annual reconsideration hearings at the time of his conviction. The Board's annual hearing policy was not instituted until 1989, five years after Appellant's conviction. Appellant does not have a constitutional right to annual reconsideration hearings.
 
 
 29
 IV. STANDARDS FOR DETERMINING SUITABILITY FOR PAROLE
 
 
 30
 Appellant's second substantive claim is that the parole rules in effect at the time he committed the crime for which he was convicted created a liberty entitlement protected by the due process clause, which the Board cannot remove by simple amendment to its Rules. Specifically, he argues that he can be denied parole only on the four specific grounds set forth in the pre-1985 Rules.
 
 
 31
 We disagree. First, the presumption of parole release provided by the pre-1985 Rules as interpreted by this Court in Mayes v. Trammell means only that Appellant may have the right to present evidence in his own behalf at his parole hearing. See Mayes, 751 F.2d at 179. This Court has never held the presumption to create a substantive right to early release. Second, we are bound by the holding of another panel in this Circuit that the post-1985 Rules pertain to all parole hearings conducted after their effective date of April 10, 1985. Wright, 810 F.2d at 591.
 
 
 32
 Finally, we note that our disposition of this case does not rely on our determination that Appellant does not have a right to be evaluated under the pre-1985 Rules. The portion of the post-1985 Rules outlining the grounds for denial of parole is virtually identical to that portion of the pre-1985 Rules. Before 1985, Appellant could be denied parole if there were a "substantial indication that [he would] not conform to the conditions of his parole." Tenn.Bd. of Parole Rule 1100-1-1-.06(3)(a) (Jan. 1, 1980 to April 10, 1985). The post-1985 Rule states that parole can be denied on the ground that there is a "substantial risk that the person will not conform to the conditions of release." Tenn.Bd. of Parole Rule 1100-1-1-.06(3)(a) (1985). This amended language is purely technical. Parole in Appellant's case was denied on grounds of "high risk" and "disciplinary violations." In other words, Appellant was denied parole because there was a "substantial indication that [he would] not conform to the conditions of his parole." The Board's denial of Appellant's petition for parole not only met the standard set forth in the post-1985 Rules; it met the standard set forth in the pre-1985 Rules under which Appellant would be judged.
 
 
 33
 Appellant cannot make out a successful claim that the parole procedures as applied in his case violated his due process rights or constituted an unconstitutional ex post facto law.
 
 V. CONCLUSION
 
 34
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation